NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 22, 2008[*]
Decided February 5, 2009

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

| | |
|---|---|
| No. 08-1643 | Appeal from the United States District Court for the Northern District of Indiana, Fort Wayne Division |
| Kevin D. Miller, *Plaintiff-Appellant*, | |
| | No. 06 C 0207 |
| *v.* | |
| Wolpoff & Abramson, LLP and Centurion Capital Corporation, *Defendants-Appellees*. | **Theresa L. Springmann**, *Judge*. |

**O R D E R**

Plaintiff Kevin Miller defaulted on a credit card debt. When defendants Centurion Capital Corporation ("Centurion") and Wolpoff & Abramson, LLP ("Wolpoff") attempted to collect the debt, Miller filed this suit against them. Miller

---

[*]The court, on its own motion, ordered that oral argument be vacated. The appeal has been submitted on the briefs and the record.

appeals from the district court's grant of summary judgment to Centurion and Wolpoff and from the district court's denial of leave to amend his complaint. We AFFIRM.

Kevin Miller defaulted on a credit card issued by Providian Bank that ended in the digits 2720. Subsequently, the debt was sold and re-sold in a series of transactions. According to the defendants, Providian sold Miller's debt to Vision Management Services, who sold it to Great Seneca Financial Corporation, who sold it to Account Management Services, who sold it to Madison Street Investments, who sold it to Jackson Capital, who finally sold it to Centurion. Centurion retained Wolpoff to collect the debt. Wolpoff obtained copies of Miller's credit report twice from Trans Union, a consumer reporting agency, to aid in collecting the debt. Wolpoff also sent a demand letter to Miller seeking payment.

Meanwhile, another entity—Melville Acquisitions Group ("Melville")—had sent Miller a demand letter on an account ending in 2720 and brought suit against Miller in Indiana state court seeking payment.[**] After Wolpoff sent the demand letter on behalf of Centurion, Miller, proceeding pro se, filed this suit against Centurion and Wolpoff, alleging that they had violated the Fair Debt Collection Practices Act ("FDCPA") and the Fair Credit Reporting Act ("FCRA"), invaded his privacy rights, and violated Illinois consumer protection laws. Centurion and Wolpoff moved for summary judgment, relying on an affidavit indicating that Centurion had purchased Miller's debt and bills of sale; however, the bills of sale did not specifically identify the account that was sold. Miller opposed the motion, citing Melville's suit to collect the same debt to suggest that a genuine issue of material fact existed regarding who owned his debt. Miller also submitted a proposed Second Amended Complaint, raising claims under the FCRA against Wolpoff for failing to identify Centurion as the "end user" of the credit reports. Subsequently, the district court ordered Wolpoff and Centurion to provide supplemental documents specifically identifying what account was sold among the various parties. The district court further ordered that "[t]here shall be no further briefing on the sufficiency of the evidence claim."

Centurion and Wolpoff submitted the requested information. Miller responded by filing a motion for sanctions and a default judgment in which he argued that the supplemental information supplied by the defendants was false. The district court

[**] The Melville action was dismissed prior to the commencement of this suit.

granted summary judgment to the defendants on the federal claims, dismissed the remaining state claims, and denied Miller's motion for sanctions and a default judgment. The district court later denied Miller's motion for reconsideration.

On appeal, Miller first argues that the district court improperly permitted Centurion to file the additional documents demonstrating the transfer of ownership from Providian Bank to Centurion. A court has inherent authority to manage its docket. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id*. A district court's exercise of its inherent authority is reviewed for an abuse of discretion. *Id*. at 50. Because the original documents filed by Centurion did not specifically reference the relevant account number that was sold, the district court could legitimately ask for further information to clarify ownership of the account. Hence, the order requesting further information did not constitute an abuse of discretion.

Miller contends that the order wrongly restricted him from challenging the documents produced by Centurion and thereby prevented him from establishing the existence of a genuine issue of material fact. Whatever the merits of this argument, Miller challenged Centurion's documents in his motion for sanctions and a default judgment. In its final order disposing of the case, the district court considered and rejected Miller's objections to these documents. Accordingly, (despite the order barring further briefing) Miller was allowed to challenge Centurion's documents.

Next, Miller argues that he established a genuine issue of material fact regarding whether Centurion actually owned his debt. The FDCPA prohibits a debt collector from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, including "the false representation of the . . . legal status of any debt," *id*. § 1692e(2)(A), a "threat to take any action that cannot legally be taken," *id*. § 1692e(5), and "any false representation or deceptive means to collect or attempt to collect any debt." *Id*. § 1692e(10). Citing Melville's suit against him, Miller contends that there must be a genuine issue of fact regarding who owned his debt because two entities are trying to collect the debt. However, the existence of multiple suits is not *ipso facto* sufficient to establish a *genuine* issue of fact. Once Centurion demonstrated through bills of sale that it owned the debt, Miller bore the burden of either casting doubt on Centurion's documents or producing evidence

that another person owned the debt.  Miller has not produced such evidence.  All the evidence before the district court demonstrated that Centurion owned Miller's debt. Whatever the merits of the defunct Melville action, Miller has not produced any evidence suggesting that another entity owned the debt and his FDCPA claim must fail. Accordingly, the district court properly granted summary judgment for the defendants on that claim.

Miller also contends that Wolpoff lacked a permissible purpose under the FCRA to obtain his credit report.  However, because Wolpoff was obtaining the report on behalf of Centurion, the owner of the debt, Wolpoff had a legitimate purpose.  *See* 15 U.S.C. § 1681b(a)(3)(A) (stating that a credit report may be obtained by a person who "intends to use the information in connection with a credit transaction involving the consumer . . . and . . . involving the . . . review or collection of an account of the consumer").

Finally, Miller argues that he should have been permitted to amend his complaint to allege a violation of the FCRA against Wolpoff for failing to disclose to Trans Union that it was obtaining Miller's credit report for Centurion.   A district court's decision to deny leave to amend a complaint is reviewed for an abuse of discretion. *Sound of Music Co. v. Minn. Mining & Mfg. Co.*, 477 F.3d 910, 922 (7th Cir. 2007).  Leave to amend may be denied where the amendment would be futile.  *Id*.  The FCRA states:

> A person may not procure a consumer report for purposes of *reselling* the report (or any information in the report) unless the person discloses to the consumer reporting agency that originally furnishes the report
>
> (A) the identity of the end-user of the report (or information).

15 U.S.C. § 1681e(e)(1) (emphasis added). Miller sought to add a claim that Wolpoff failed to identify Centurion as the "end-user" in violation of this provision.  However, 15 U.S.C. § 1681e(e)(1)(A) is only applicable if Wolpoff intended to resell the report. Although the FCRA does not define the term "reselling," it does define "reseller":

> The term "reseller" means a consumer reporting agency that--
>    (1) assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning

any consumer for purposes of furnishing such information to any third party, to
the extent of such activities; and

   (2) does not maintain a database of the assembled or merged information from
which new consumer reports are produced.

*Id.* § 1681a(u).  A "consumer reporting agency" is an entity that "regularly engages . . .
in the practice of assembling or evaluating consumer credit information or other
information on consumers."  *Id.* § 1681a(f).  Wolpoff, a law firm, obtained Miller's credit
information to help Centurion collect a debt.  Nothing indicates that Wolpoff regularly
assembled or evaluated consumer credit information.  Thus, Wolpoff was not a
"reseller" and was not engaged in "reselling" under 15 U.S.C. § 1681e(e)(1)(A).  Because
amending the complaint would have been futile, the district court did not abuse its
discretion in denying Miller leave to amend the complaint.

For these reasons, the district court's grant of summary judgment for the
defendants is AFFIRMED.